ROCHESTER PLUMBING SUPPLY CO., INC., Appellant, v A. BURGART, INC., Respondent. (Appeal No. 1.)

ROCHESTER PLUMBING SUPPLY CO., INC., Third-Party Plaintiff-Respondent, v W-K-M VALVE DIVISION OF ACF INDUSTRIES, INC., Third-Party Defendant-Appellant. (Appeal No. 2.)

Fourth Department, July 18, 1975

*Burns, Suter & Doyle (Paul K. Lange* of counsel), for appellant and third-party plaintiff-respondent.

*Houghton & Pappas (Thomas E. Lenweaver* of counsel), for respondent.

*Hickey, McHugh & Garlick (William K. Sutherland* of counsel), for third-party defendant-appellant.

SIMONS, J. Defendant, Burgart, Inc., is a plumbing contractor and was the successful bidder for subcontract work on the construction of the Rochester sewage treatment plant. Specifications for the work required the use of either DeZurik or Magna Seal valves and in preparing its bid for the general contractor, Burgart used quotations for Magna Seal valves supplied by a representative of the manufacturer, third-party defendant W-K-M Valve Division of ACF Industries, Inc., in co-operation with W-K-M's exclusive Rochester distributor, plaintiff, Rochester Plumbing Supply Co., Inc. After Burgart was awarded the subcontract, it notified Rochester Supply and W-K-M of its intention to purchase the Magna Seal valves but W-K-M refused to perform, claiming that there was no contract between the parties because it had not accepted Burgart's purchase offer.

Rochester Supply sued Burgart on an unrelated claim for goods sold and delivered and received a judgment by stipulation of the parties. Burgart counterclaimed against Rochester Supply in that action for breach of the contract to sell the Magna Seal valves and Rochester Supply brought a third-party action against its manufacturer, W-K-M. Obliged to proceed with its subcontract, Burgart purchased DeZurik

valves in place of W-K-M's valves at over $20,000 additional cost. It is that loss which is the subject of the counterclaim and the third-party action. The trial court found a valid contract and directed a verdict for Burgart against Rochester Supply and for Rochester Supply against W-K-M on its cause of action for indemnity. It also directed a verdict in favor of Rochester Supply against W-K-M on an unpleaded cause of action for lost profits.

We must decide whether Rochester Supply and W-K-M submitted an offer which could be accepted by Burgart giving rise to a contract, as distinguished from submitting a price quotation requiring an offer to purchase from Burgart; and if the submission was an offer used by Burgart in preparing its bid, when was the offer accepted to create a binding contract?

In the summer of 1970 when bids were being prepared for the construction of the sewage treatment plant, Rochester Plumbing requested W-K-M's salesman, Hollister, to prepare price quotations. Hollister made such a list by reference to job specifications he borrowed from Burgart. The quotations listed the required valves of stock sizes, the price of each, terms of shipment and payment and the dealer's discount. Two days later, after further study of the specifications, Hollister added a quotation for the motor actuated valves, valves which had to be fabricated by the manufacturer after approval of preliminary drawings by the consulting engineers. These prices were annexed to the original quotation and subject to the same terms. The quotation stated "approximately 150 valves are required", but no specific quantities were listed. Rochester Supply distributed the quotations to interested plumbing contractors.

On the basis of these quotations Burgart successfully bid on the plumbing subcontract and in December or January it notified Rochester Supply it intended to purchase the Magna Seal valves and Rochester Supply notified W-K-M of the order. W-K-M started to prepare engineering drawings on the motor actuated valves and submitted the first set of plans for approval in January, 1971. They were apparently incomplete or unsatisfactory and there were additional communications between the parties until February 13, 1971 when W-K-M advised that it would proceed no further on the plans without a written order for the motor actuated valves but stated that the order could be canceled if the subsequent drawings were not approved. Nothing was said about the stock items. Burgart

then prepared a written order dated February 22 for all of the required 105 valves, at a total price of $42,792.74. It delivered the order to Rochester Supply and Rochester Supply forwarded it to W-K-M. It is not disputed that this order was received by W-K-M, but it was not formally acknowledged or accepted by the third-party defendant. Notwithstanding its failure to acknowledge the order, W-K-M continued to prepare engineering drawings; the last set was submitted to Burgart on March 29, 1971. Burgart had complained several times about the delay in completing the order, and finally in response to a "5th Request", a letter dated April 11, 1971, which asked for early completion of the drawings because the job was being held up, W-K-M notified Rochester Supply by letter dated April 14, 1971 that the manufacture of Magna Seal valves had been discontinued on March 30, 1971 except upon orders accepted before that date. Burgart, having no choice if it intended to complete the contract, purchased DeZurik valves at a cost of $60,262.83. It counterclaimed against Rochester Supply for the difference in price between Magna Seal and DeZurik valves.

These facts are undisputed and the question of whether a contract existed between the parties is an issue of law for the court *(Cortland Asbestos Prods. v J. & K. Plumbing & Heating Co.,* 33 AD2d 11).

W-K-M contends that the offer was made on February 22, 1971 by Burgart's written purchase order and that it did not accept that offer but we believe the price quotations supplied by W-K-M to Rochester Supply and by Rochester Supply to Burgart on July 15 and 17, 1970 constituted offers to sell (17 CJS, Contracts, § 35; 1 Williston, Contracts [3d ed], § 24A). The supplier and manufacturer solicited this business, they itemized the various valves required in the contract specifications and gave the unit price for each, indicating the terms of delivery and payment and agreeing to supply approximately 150 valves according to specifications. This information was supplied specifically for the construction of the Rochester Sewage Treatment Plant for the benefit of Burgart and other contractors bidding on the plumbing contract and with the knowledge that the quotations would be used for the subcontractor's bids. Upon these facts, the prices offered constituted more than an invitation to buy, they were offers to sell (see 17 CJS, Contracts, § 46, pp 693–694; 77 CJS, Sales, § 25, pp 633–634; Ann. 43 ALR3d 1102, Advertisement-Offer to Form Contract).

The contract was made when the offer was accepted by Burgart before it was withdrawn and without changing its terms or conditions (cf. *Schenectady Stove Co. v Holbrook,* 101 NY 45). Acceptance was not a consequence of the use of Burgart's figures by the prime contractor in his bid to the municipality (see *Malloy v New Rochelle,* 198 NY 402; 1 Williston, Contracts [3d ed], § 31), or the municipality's acceptance of the prime contractor's bid, or the prime contractor's acceptance of Burgart's bid (see *Cortland Asbestos Prods. v J. & K. Plumbing & Heating Co.,* 33 AD2d 11, *supra; Baird Co. v Gimbel Bros.,* 64 F2d 344; *Daum Constr. Co. v Child,* 122 Utah 194; and cf. *Drennan v Star Paving Co.,* 51 Cal 2d 409 [price quote was an irrevocable offer]). Acceptance was by act of Burgart communicated to the offeror.

W-K-M also contends that there was a condition precedent to the existence of the contract because of the required approval of its engineering drawings for the motor actuated valves. If it was, it was a condition for the benefit of Burgart which Burgart could waive, but it seems more realistic to find that preparation of the drawings was a condition of performance, not a condition precedent. It was a term of the offer known to W-K-M at the time it quoted prices and one which it was attempting to perform when it canceled the order. Performance of the condition was entirely within the control of W-K-M and it may not frustrate the contract because of its own delay. The parties to a contract may condition performance on the act of a third person but where the promisor prevents performance of the condition by the third person, then the nonperformance of the condition will not excuse his conduct *(Kooleraire Serv. & Installation Corp. v Board of Educ. of City of N. Y.,* 28 NY2d 101; *Hopedale Elec. Co. v Electric Stor. Battery Co.,* 132 App Div 348, affd 198 NY 588; *McIntosh Ready Mix Concrete Corp. v Battaglini Corp.,* 36 AD2d 561; Restatement, Contracts, § 295). W-K-M does not attribute the delay to Burgart nor does it contend that the valves could not be manufactured or that acceptance of the engineering drawings would not be forthcoming if the drawing had been completed. In other words, the condition was performable and the failure to perform rested upon W-K-M, not Burgart (see 17A CJS, Contracts, § 456, pp 584–585). Its nonperformance does not provide W-K-M with a defense to this action.

Two other matters require comment. Rochester Supply's

action over against W-K-M sought indemnity. At the conclusion of the proof and over the objection of counsel, the court permitted amendment of the third-party complaint to assert a new cause of action for lost profits (CPLR 3025, subd [c]). It conformed the pleadings to proof that Rochester Supply expected a profit of 5% of the $42,792.74 order it placed with W-K-M and awarded an additional judgment for $2,139.61, plus interest. This trial order, made without prior warning after the evidence was closed and minutes before an order for a directed verdict was entered, permitted recovery on a cause of action against which the third-party defendant had no opportunity to defend. It was an improvident exercise of the court's discretion.

Finally, the indemnity judgment in the third-party action is unconditional and must be amended to condition Rochester Supply's recovery upon payment of the Burgart judgment (see *Klinger v Dudley*, 49 AD2d 693; *Adams v Lindsay*, 77 Misc 2d 824).

The order and judgment in favor of third-party plaintiff Rochester Plumbing Supply Co., Inc. should be modified to delete the judgment for lost profits and to make it conditional and as modified affirmed. The order and judgment in favor of defendant, A. Burgart, Inc., against plaintiff, Rochester Plumbing Supply Co., Inc., should be affirmed.

Marsh, P. J., Cardamone, Goldman and Witmer, JJ., concur.

In Appeal No. 1 judgment and order unanimously affirmed with costs.

In Appeal No. 2 judgment and order unanimously modified in accordance with opinion by Simons, J. in Appeal No. 1, decided herewith and as modified affirmed, without costs.