Ross 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00383-CV







Edeltraud Amalia Ross, Appellant



v.



James Glenn Ross, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT


NO. 87-793-F, HONORABLE JOHN CARTER, JUDGE PRESIDING








 Appellee James Ross sued appellant Edeltraud Amalia "Trudy" Ross for
reimbursement of expenses incurred in connection with the upkeep of agricultural real estate
awarded to Trudy under their prior divorce decree. Trudy appeals the trial-court judgment
awarding reimbursement damages to James and denying her counterclaim for tortious interference
with a potential mineral lease. We will reverse those portions of the judgment and render
judgment that James take nothing by his reimbursement claim and that Trudy recover damages
on her claim for tortious interference. We will affirm the remainder of the trial court's judgment.



THE CONTROVERSY


 James and Trudy were divorced pursuant to a decree rendered in January 1989 and
signed by the trial court in April 1990. The decree awarded Trudy a 494-acre tract of land in
Hardeman County (the "homeplace") and declared her the agricultural operator. The decree
awarded James other tracts of land located in Hardeman and Childress Counties. On January 26,
1989, six days after the divorce decree had been rendered orally in open court, James signed a
Conservation Reserve Program contract ("the CRP") (1) with the U.S. Department of Agriculture,
covering 323 acres of the homeplace and an adjacent 212 acres awarded to him under the divorce
decree. James designated himself as the operator of all the land covered by the CRP, which
entitled him to receive all payments made under the CRP. At the same time, James appealed the
divorce decree, challenging the award of the homeplace to Trudy. This Court overruled his points
of error and affirmed the decree. Ross v. Ross, No. 3-90-188-CV (Tex. App.--Austin November
20, 1991, no writ) (not designated for publication).

 While the divorce case was pending on appeal, James maintained the homeplace,
providing agricultural services he felt necessary to keep the homeplace in compliance with the
CRP requirements. During the summer and fall of 1990 and 1991, James did the following work
on the homeplace: aerial spraying, fertilizing, reseeding, and shredding. Trudy, who lives in
Williamson County, did not know that James was performing this work on her land. During this
time, James bore all the financial consequences associated with Trudy's homeplace: he received
all the CRP payments and paid all taxes and mortgage installments.

 In December 1991, James sued Trudy in district court seeking reimbursement for
his agricultural services (2) to the homeplace and for the tax and mortgage payments he had made
on the homeplace. Trudy counterclaimed for recovery of her portion of the CRP payments James
had received and also for $8,992 in "bonus" consideration for a mineral lease that she lost due to
James' intervention just before the execution of the lease. After a bench trial, the district court
awarded James reimbursement damages of $19,751.83, which included $17,687.60 for his work
on the homeplace and $2064.23 for Trudy's share of tax and mortgage payments. The court
denied Trudy's claim for tortious interference but awarded her $12,748.00 for her share of the
CRP payments that James had received. The final result was a net judgment for James in the
amount of $7,003.83.

 Trudy appeals the trial-court judgment in five points of error, arguing that: (1) the
trial court erred in awarding James damages for his agricultural work on the homeplace because
there is no evidence that she knew about or accepted the work; (2) the trial court erred in failing
to award damages on her tortious interference claim because she presented conclusive evidence
establishing her claim as a matter of law; (3) the trial court erred by failing to file findings of fact
and conclusions of law; (4) the evidence in the record is factually insufficient to prove that James
actually worked on the homeplace; and (5) the trial court erred in overruling Trudy's motion for
continuance due to surprise evidence on James' reimbursement claim.



DISCUSSION


Unjust Enrichment

 In her first point of error, Trudy attacks the trial court's award of damages to James
for the agricultural work he performed on the homeplace following their divorce. James argues
a theory of unjust enrichment: the CRP required him to properly maintain all of the covered land,
including Trudy's homeplace, or he would lose the CRP payments attributable to the land awarded
to him under the divorce decree. Therefore, James argues, he had a reasonable basis for working
on Trudy's land, and Trudy would be unjustly enriched if he were not reimbursed for his services. 
Trudy responds that James' claim must fail because she never requested the services and did not
know that James was doing the work. Therefore, even if she was enriched by James' services,
Trudy argues that the enrichment was not unjust because she had no knowledge it was being done
and therefore never gave James any reason to believe that she would be willing to pay for it. 
Trudy also argues that James' position fails of its own weight because the CRP did not condition
his payments on the upkeep of her land.

 Before analyzing Trudy's no-evidence point, we must first establish the legal theory
that forms the basis of the judgment for James. "Unjust enrichment" is not a specific cause of
action, but rather a description of the condition that equity acts to prevent. See Oxford Finance
Cos. v. Velez, 807 S.W.2d 460, 465 (Tex. App.--Austin 1991, writ denied); LaChance v.
Hollenbeck, 695 S.W.2d 618, 620 (Tex. App.--Austin 1985, writ ref'd n.r.e.). In an "unjust
enrichment" claim, the plaintiff contends that the defendant has unfairly retained, without
compensation, one of two types of benefit: personal property (usually money) or services
(including materials used in the provision of services). The former claim sounds in restitution,
but is often labelled "unjust enrichment." See Heldenfels Bros. v. City of Corpus Christi, 832
S.W.2d 39, 41 (Tex. 1992); Velez, 807 S.W.2d at 465. The latter claim sounds in quantum
meruit; although the plaintiff similarly alleges unjust enrichment, the wrongly retained benefit is
in the form of a service. See Heldenfels Bros., 832 S.W.2d at 41; Nagel v. Kentucky Cent. Ins.
Co., 894 S.W.2d 19, 21 (Tex. App.--Austin 1994, writ denied); LaChance, 695 S.W.2d at 620-21. 
Because James furnished agricultural services to Trudy's homeplace, his claim sounds in quantum
meruit to prevent Trudy being unjustly enriched by those services.

 To prevail in quantum meruit, a claimant must establish that: (1) valuable services
and/or materials were furnished, (2) to the party sought to be charged, (3) which were accepted
by the party sought to be charged, and (4) under circumstances that would reasonably notify the
recipient that the plaintiff, in performing, expected to be paid by the recipient. Heldenfels Bros.,
832 S.W.2d at 41; Nagel, 894 S.W.2d at 21; LaChance, 695 S.W.2d at 620-21. Trudy contends
that there is no evidence in the record to support the third and fourth elements of James' quantum
meruit claim, arguing that she did not know about or accept the services and, consequently, she
was not reasonably notified that James expected to be paid for the services.

 In deciding a no-evidence point, we must consider only the evidence and inferences
tending to support the finding of the trier of fact and disregard all evidence and inferences to the
contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Best v. Ryan
Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). We will uphold the finding if more than
a scintilla of evidence supports it. Crye, 907 S.W.2d at 499; Seideneck v. Cal Bayreuther
Assocs., 451 S.W.2d 752, 755 (Tex. 1970); In re King's Estate, 244 S.W.2d 660, 661 (Tex.
1951). The evidence supporting a finding amounts to more than a scintilla if reasonable minds
could arrive at the finding given the facts proved in the particular case. Crye, 907 S.W.2d at 499;
Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); William Powers, Jr. & Jack
Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515, 522
(1991).

 We find no evidence in the record showing that Trudy knew about or accepted
James' services before they were performed. Only two items in the record arguably support the
quantum meruit judgment. First, James testified that Trudy never told him not to work on the
homeplace. James, however, must prove that Trudy knew about his services and accepted them
in circumstances that indicated that she knew James expected to be paid. See Heldenfels Bros.,
832 S.W.2d at 41; Nagel, 894 S.W.2d at 21; LaChance, 695 S.W.2d at 620-21. Trudy lives in
Williamson County and, at the time of trial, had not visited the homeplace since the divorce. 
James' testimony that Trudy did not forbid him to work on her land does not, therefore, provide
evidence or even an inference that she accepted his services. Indeed, the evidence is equally
susceptible to the inference that Trudy never knew he intended to work on her land. Evidence
susceptible of two opposite inferences is no more than a scintilla of evidence and cannot support
a judgment. Tubelite v. Risica & Sons, Inc., 819 S.W.2d 801, 805 (Tex. 1991); Litton Indus.
Prods., Inc. v. Gammage, 668 S.W.2d 319, 324 (Tex. 1984).

 Second, James introduced a letter that he wrote to Trudy in July 1990 asking for
reimbursement for services he had previously performed on the homeplace. James apparently
argues that the letter qualifies as evidence supporting reimbursement for the work he subsequently
performed on the homeplace in October 1990 and in 1991. We disagree. The letter clearly
indicates that James wanted to be reimbursed for services he had performed earlier in 1990
without Trudy's knowledge. The letter does not, however, indicate that James would continue
performing those services. We quote the letter in relevant part:



I have been assured that you have received a bill for . . . spraying the homeplace. 
In order to hold my head up in the community I have paid this bill. Now, Mark
is just completing with a fertilization program . . . . I will be expected to pay this
bill also. These bills are the reason I was opposed to go in the CRP program. 
These type bills will not stop after the first year or two in spite of what you have
been led to believe by that fathead in the [Agricultural Stabilization and
Conservation Service] office. I really expect that the annual maintenance cost to
stay in the CRP program is going to level off at approx 20% of the payment. . . . 
Your [share] of the above named expenses now total approx $9344.00. These are
all paid except fertilizer bill. It will be paid as soon as it becomes ten days past
due.



The remainder of the letter entails an eager offer to purchase the homeplace from Trudy, in which
James urges Trudy to evaluate her selling price in light of the costs associated with maintaining
the homeplace. We hold that the letter provides no more than a scintilla of evidence that Trudy
knew James would continue to provide services and expect to be paid. The letter never states that
James will continue his work. Indeed, an inference may be drawn that since James never received
the demanded reimbursement, he would not be performing any services in the future. Certainly
the letter does not indicate that he would be seeking reimbursement in the future. The letter only
states that James had paid bills for past services and wanted Trudy to repay him. Although James
mentioned future costs to maintain the homestead, he in no way indicated that he would be
incurring those costs. Indeed, the most plausible inference from James' discussion of the costs
is that he wanted Trudy to rethink her selling price in light of future maintenance expenses. Thus,
even if the letter could plausibly be read to imply that James would continue his work, the
existence of two opposite inferences prevents the letter from being anything more than a mere
scintilla of evidence. Tubelite, 819 S.W.2d at 805; Litton Indus. Prods., 668 S.W.2d at 324.

 James argues that the CRP contract is evidence to support his reimbursement claim. 
James contends that the terms of the contract required him to maintain Trudy's homeplace in order
to receive payments for his own land under the same contract, and therefore he had a reasonable
basis for performing the work. We disagree. Even if the CRP does condition James' payments
for his own land on the status of the homeplace, (3) that fact is irrelevant to James' quantum meruit
claim against Trudy. The CRP only establishes James' rights and responsibilities with respect to
the U.S. government; it gives him no rights against Trudy. To prevail against Trudy in quantum
meruit, James must establish that Trudy accepted his services in circumstances indicating to her
that he expected to be paid. The CRP, at the very most, establishes that James felt he needed to
work on the homeplace to preserve his rights. The CRP in no way establishes that Trudy knew
about or accepted those services.

 For the reasons given, we hold that the record contains no evidence to support
James' quantum meruit claim for services performed on the homeplace. We therefore sustain
Trudy's first point of error.



Tortious Interference

 In her second point of error, Trudy argues that the trial court erred by rejecting her
claim that James tortiously interfered with a prospective mineral lease for the homeplace. Trudy
contends that she established her claim as a matter of law by providing conclusive evidence to the
trial court. In deciding a legal-sufficiency point of error that attempts to overcome an adverse fact
finding as a matter of law, we must first consider only the evidence and inferences tending to
support the finding of the trier of fact and disregard all evidence and inferences to the contrary. 
If there is no evidence to support the finding, we must then examine the entire record to see if the
contrary proposition is established as a matter of law. Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982); see Texas & N.O.R.R.
v. Burden, 203 S.W.2d 522, 528-31 (Tex. 1947); Powers & Ratliff, supra, 69 Tex. L. Rev. at
523.

 Before turning to the record, we must frame our inquiry with the elements of
Trudy's cause of action. The elements of a tortious interference claim are: (1) an existing or
prospective contract; (2) willful and intentional interference with that contract; (3) which
proximately caused harm to the plaintiff; and (4) actual damages or loss. See Texas Beef Cattle
Co. v. Green, No. 94-1004, slip op. at 11 (Tex. Jan. 11, 1996); Sterner, 767 S.W.2d at 689; Doe
v. Smithkline Beecham Corp., 855 S.W.2d 248, 258 (Tex. App.--Austin 1993), judgment reformed
on other grounds and affirmed, 903 S.W.2d 347 (Tex. 1995). The defendant in a tortious
interference claim may avoid liability by proving, as an affirmative defense, a privilege or
justification for the interference. Texas Beef Cattle Co., slip. op at 11-13; Sterner, 767 S.W.2d
at 689-90. Trudy argues that she need only address the four elements of her claim because James
did not plead the affirmative defense of privilege or justification for his interference. We agree. 
Privilege or justification for interference with a contract is an affirmative defense that must be
pleaded and proved by the defendant pursuant to Texas Rule of Civil Procedure 94. Texas Beef
Cattle Co., slip. op at 11-12; Sterner, 767 S.W.2d at 689-90. By failing to plead such a defense
in the trial court, James waived it. Tex. R. Civ. P. 94; Shoemake v. Fogel, Ltd., 826 S.W.2d
933, 937 (Tex. 1989); Tacon Mechanical Contractors, Inc. v. Grant Sheet Metal, Inc., 889
S.W.2d 666, 671 (Tex. App.--Houston [14th Dist.] 1994, writ denied). We therefore examine the
record only to determine whether Trudy conclusively established the elements of her claim.

 After the divorce decree was rendered, Trudy began negotiating a possible mineral
lease for the homeplace with J. Roger Allspaugh, agent for the potential lessee. Trudy and
Allspaugh agreed on the terms of the lease, and Allspaugh mailed Trudy a draft of the lease for
her signature on July 7, 1991, along with two bank drafts totalling $8892 for the agreed "bonus"
consideration. James learned of the negotiations and, on July 31, 1991, filed an affidavit in the
Hardeman County deed records to oppose the lease. In his affidavit, James noted that the
homeplace had been awarded to Trudy under the divorce decree, but he opined that he still owned
the homeplace because he had appealed the divorce to this Court. (4) James stated that he understood
Trudy planned to enter into a mineral lease for the homestead and noted that he opposed the lease
based on his alleged continuing ownership interest in the homeplace.

 On August 9, 1991, Trudy's attorney Rob Robertson wrote to Allspaugh, noting
that he had deposited the drafts and would return the signed lease to Allspaugh shortly. Robertson
indicated that he had received James' affidavit and urged Allspaugh to go through with the deal
despite James' actions. On August 15, 1991, James' attorney wrote Allspaugh directly to state
James' opposition to the lease. As result of James' actions, Allspaugh's client decided not to
execute the lease. Allspaugh wrote Robertson on September 23, 1991, to call off the deal, noting
that his client was unwilling to proceed because James' actions cast doubt on the title to the
homeplace.

 We hold that this evidence conclusively establishes Trudy's claim that James
tortiously interfered with her potential mineral lease. Because Allspaugh sent Trudy a lease for
signature and the drafts for her bonus consideration, it is clear that the terms of the lease were set
and that the lease would have been executed but for James' actions. James' actions amounted to
intentional interference with the lease. He purposely filed his affidavit and had his attorney write
to Allspaugh for the express purpose of opposing the lease and urging that it not be executed. In
Allspaugh's September 1991 letter to Robertson, he stated that James' actions were the only
reason that Allspaugh's client declined to go forward. Finally, Trudy suffered actual harm by
losing her bonus consideration, which would have been paid if the lease had been executed.

 In response, James argues that he was privileged to oppose the lease because he was
entitled to preserve his potential rights by pointing out the obvious fact that the divorce was on
appeal and therefore he might regain full ownership of the homeplace. Whatever the merits of
his contention, we cannot consider it in reviewing Trudy's point of error. James' argument goes
to establish the affirmative defense of privilege or justification, but James has waived that defense
by failing to plead it in the trial court. Therefore, we end our inquiry after determining that the
interference was intentional; whether it was privileged or justified is not at issue in this appeal. 
We sustain Trudy's second point of error.



Trudy's Remaining Points of Error

 In her third and fourth points of error, Trudy argues that the evidence is factually
insufficient to prove James actually worked on the homeplace and that the trial court erred in
denying her request for a continuance due to surprise evidence presented by James in support of
his quantum meruit claim. Because we have sustained Trudy's no-evidence point on James'
quantum meruit claim, we need not address these points.

 In her fifth point of error, Trudy argues that the trial court erred in failing to file
findings of fact and conclusions of law. As a general rule, in the absence of properly requested
and filed findings of fact, we must imply any findings necessary to support the judgment. Zac
Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987), cert. denied, 484 U.S. 1063
(1988). However, this rule of implication "cannot be invoked when the evidence establishes as
a matter of law the issue to be determined." Id. By sustaining her no-evidence and conclusive-evidence points of error, we have determined that Trudy prevails as a matter of law. The absence
of trial-court findings of fact is therefore moot and irrelevant to the points of error that we have
considered.



CONCLUSION


 We sustain Trudy's first two points of error and hold that: (1) the record contains
no evidence to support James' quantum meruit claim for his agricultural upkeep work on Trudy's
homeplace, and (2) Trudy conclusively proved her claim that James tortiously interfered with her
prospective mineral lease. Therefore, we reverse those portions of the trial court's judgment and
render judgment that: (1) James Ross take nothing by his claim for $17,687.60 in damages for
agricultural services to the homeplace, and (2) that Trudy recover $8,892 in damages for James'
tortious interference with her mineral lease. We affirm the remainder of the trial court's
judgment.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed in Part; Reversed and Rendered in Part

Filed: May 8, 1996

Do Not Publish

1.   Under a CRP contract, the federal government provides subsidy payments to a
farmer who keeps agricultural land in compliance with federal conservation
requirements.
2.   We note that James Ross performed all the work at issue in this appeal after April
1990, when the divorce decree was signed.
3.   Our reading of the CRP indicates that, when a participant in the CRP transfers a
portion of the land subject to the CRP, the transferor's rights and responsibilities in the
retained land are unaffected even if the transferred land falls out of compliance with the
CRP.
4.   The record, however, reflects that James did not file a supersedeas bond to suspend
enforcement of the decree while his appeal was pending.


n that Allspaugh's client declined to go forward. Finally, Trudy suffered actual harm by
losing her bonus consideration, which would have been paid if the lease had been executed.

 In response, James argues that he was privileged to oppose the lease because he was
entitled to preserve his potential rights by pointing out the obvious fact that the divorce was on
appeal and therefore he might regain full ownership of the homeplace. Whatever the merits of
his contention, we cannot consider it in reviewing Trudy's point of error. James' argument goes
to establish the affirmative defense of privilege or justification, but James has waived that defense
by failing to plead it in the trial court. Therefore, we end our inquiry after determining that the
interference was intentional; whether it was privileged or justified is not at issue in this appeal. 
We sustain Trudy's second point of error.



Trudy's Remaining Points of Error

 In her third and fourth points of error, Trudy argues that the evidence is factually
insufficient to prove James actually worked on the homeplace and that the trial court erred in
denying her request for a continuance due to surprise evidence presented by James in support of
his quantum meruit claim. Because we have sustained Trudy's no-evidence point on James'
quantum meruit claim, we need not address these points.

 In her fifth point of error, Trudy argues that the trial court erred in failing to file
findings of fact and conclusions of law. As a general rule, in the absence of properly requested
and filed findings of fact, we must imply any findings necessary to support the judgment. Zac
Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987), cert. denied, 484 U.S. 1063
(1988). However, this rule of implication "cannot be invoked when the evidence establishes as
a matter of law the issue to be determined." Id. By sustaining her no-evidence and conclusive-evidence points of error, we have determined that Trudy prevails as a matter of law. The absence
of trial-court findings of fact is therefore moot and irrelevant to the points of error that we have
considered.



CONCLUSIONtter of law the issue to be determined." Id. By sustaining her no-evidence and conclusive-evidence points of error, we have determined that Trudy prevails as a matter of law. The absence
of trial-court findings of fact is therefore moot and irrelevant to the points of error that we have
considered.



CONCLUSION94-00383-CV







Edeltraud Amalia Ross, Appellant



v.



James Glenn Ross, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT


NO. 87-793-F, HONORABLE JOHN CARTER, JUDGE PRESIDING








 Appellee James Ross sued appellant Edeltraud Amalia "Trudy" Ross for
reimbursement of expenses incurred in connection with the upkeep of agricultural real estate
awarded to Trudy under their prior divorce decree. Trudy appeals the trial-court judgment
awarding reimbursement damages to James and denying her counterclaim for tortious interference
with a potential mineral lease. We will reverse those portions of the judgment and render
judgment that James take nothing by his reimbursement claim and that Trudy recover damages
on her claim for tortious interference. We will affirm the remainder of the trial court's judgment.



THE CONTROVERSY


 James and Trudy were divorced pursuant to a decree rendered in January 1989 and
signed by the trial court in April 1990. The decree awarded Trudy a 494-acre tract of land in
Hardeman County (the "homeplace") and declared her the agricultural operator. The decree
awarded James other tracts of land located in Hardeman and Childress Counties. On January 26,
1989, six days after the divorce decree had been rendered orally in open court, James signed a
Conservation Reserve Program contract ("the CRP") (1) with the U.S. Department of Agriculture,
covering 323 acres of the homeplace and an adjacent 212 acres awarded to him under the divorce
decree. James designated himself as the operator of all the land covered by the CRP, which
entitled him to receive all payments made under the CRP. At the same time, James appealed the
divorce decree, challenging the award of the homeplace to Trudy. This Court overruled his points
of error and affirmed the decree. Ross v. Ross, No. 3-90-188-CV (Tex. App.--Austin November
20, 1991, no writ) (not designated for publication).

 While the divorce case was pending on appeal, James maintained the homeplace,
providing agricultural services he felt necessary to keep the homeplace in compliance with the
CRP requirements. During the summer and fall of 1990 and 1991, James did the following work
on the homeplace: aerial spraying, fertilizing, reseeding, and shredding. Trudy, who lives in
Williamson County, did not know that James was performing this work on her land. During this
time, James bore all the financial consequences associated with Trudy's homeplace: he received
all the CRP payments and paid all taxes and mortgage installments.

 In December 1991, James sued Trudy in district court seeking reimbursement for
his agricultural services (2) to the homeplace and for the tax and mortgage payments he had made
on the homeplace. Trudy counterclaimed for recovery of her portion of the CRP payments James
had received and also for $8,992 in "bonus" consideration for a mineral lease that she lost due to
James' intervention just before the execution of the lease. After a bench trial, the district court
awarded James reimbursement damages of $19,751.83, which included $17,687.60 for his work
on the homeplace and $2064.23 for Trudy's share of tax and mortgage payments. The court
denied Trudy's claim for tortious interference but awarded her $12,748.00 for her share of the
CRP payments that James had received. The final result was a net judgment for James in the
amount of $7,003.83.

 Trudy appeals the trial-court judgment in five points of error, arguing that: (1) the
trial court erred in awarding James damages for his agricultural work on the homeplace because
there is no evidence that she knew about or accepted the work; (2) the trial court erred in failing
to award damages on her tortious interference claim because she presented conclusive evidence
establishing her claim as a matter of law; (3) the trial court erred by failing to file findings of fact
and conclusions of law; (4) the evidence in the record is factually insufficient to prove that James
actually worked on the homeplace; and (5) the trial court erred in overruling Trudy's motion for
continuance due to surprise evidence on James' reimbursement claim.



DISCUSSION


Unjust Enrichment

 In her first point of error, Trudy attacks the trial court's award of damages to James
for the agricultural work he performed on the homeplace following their divorce. James argues
a theory of unjust enrichment: the CRP required him to properly maintain all of the covered land,
including Trudy's homeplace, or he would lose the CRP payments attributable to the land awarded
to him under the divorce decree. Therefore, James argues, he had a reasonable basis for working
on Trudy's land, and Trudy would be unjustly enriched if he were not reimbursed for his services. 
Trudy responds that James' claim must fail because she never requested the services and did not
know that James was doing the work. Therefore, even if she was enriched by James' services,
Trudy argues that the enrichment was not unjust because she had no knowledge it was being done
and therefore never gave James any reason to believe that she would be willing to pay for it. 
Trudy also argues that James' position fails of its own weight because the CRP did not condition
his payments on the upkeep of her land.

 Before analyzing Trudy's no-evidence point, we must first establish the legal theory
that forms the basis of the judgment for James. "Unjust enrichment" is not a specific cause of
action, but rather a description of the condition that equity acts to prevent. See Oxford Finance
Cos. v. Velez, 807 S.W.2d 460, 465 (Tex. App.--Austin 1991, writ denied); LaChance v.
Hollenbeck, 695 S.W.2d 618, 620 (Tex. App.--Austin 1985, writ ref'd n.r.e.). In an "unjust
enrichment" claim, the plaintiff contends that the defendant has unfairly retained, without
compensation, one of two types of benefit: personal property (usually money) or services
(including materials used in the provision of services). The former claim sounds in restitution,
but is often labelled "unjust enrichment." See Heldenfels Bros. v. City of Corpus Christi, 832
S.W.2d 39, 41 (Tex. 1992); Velez, 807 S.W.2d at 465. The latter claim sounds in quantum
meruit; although the plaintiff similarly alleges unjust enrichment, the wrongly retained benefit is
in the form of a service. See Heldenfels Bros., 832 S.W.2d at 41; Nagel v. Kentucky Cent. Ins.
Co., 894 S.W.2d 19, 21 (Tex. App.--Austin 1994, writ denied); LaChance, 695 S.W.2d at 620-21. 
Because James furnished agricultural services to Trudy's homeplace, his claim sounds in quantum
meruit to prevent Trudy being unjustly enriched by those services.

 To prevail in quantum meruit, a claimant must establish that: (1) valuable services
and/or materials were furnished, (2) to the party sought to be charged, (3) which were accepted
by the party sought to be charged, and (4) under circumstances that would reasonably notify the
recipient that the plaintiff, in performing, expected to be paid by the recipient. Heldenfels Bros.,
832 S.W.2d at 41; Nagel, 894 S.W.2d at 21; LaChance, 695 S.W.2d at 620-21. Trudy contends
that there is no evidence in the record to support the third and fourth elements of James' quantum
meruit claim, arguing that she did not know about or accept the services and, consequently, she
was not reasonably notified that James expected to be paid for the services.

 In deciding a no-evidence point, we must consider only the evidence and inferences
tending to support the finding of the trier of fact and disregard all evidence and inferences to the
contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Best v. Ryan
Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). We will uphold the finding if more than
a scintilla of evidence supports it. Crye, 907 S.W.2d at 499; Seideneck v. Cal Bayreuther
Assocs., 451 S.W.2d 752, 755 (Tex. 1970); In re King's Estate, 244 S.W.2d 660, 661 (Tex.
1951). The evidence supporting a finding amounts to more than a scintilla if reasonable minds
could arrive at the finding given the facts proved in the particular case. Crye, 907 S.W.2d at 499;
Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); William Powers, Jr. & Jack
Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515, 522
(1991).

 We find no evidence in the record showing that Trudy knew about or accepted
James' services before they were performed. Only two items in the record arguably support the
quantum meruit judgment. First, James testified that Trudy never told him not to work on the
homeplace. James, however, must prove that Trudy knew about his services and accepted them
in circumstances that indicated that she knew James expected to be paid. See Heldenfels Bros.,
832 S.W.2d at 41; Nagel, 894 S.W.2d at 21; LaChance, 695 S.W.2d at 620-21. Trudy lives in
Williamson County and, at the time of trial, had not visited the homeplace since the divorce. 
James' testimony that Trudy did not forbid him to work on her land does not, therefore, provide
evidence or even an inference that she accepted his services. Indeed, the evidence is equally
susceptible to the inference that Trudy never knew he intended to work on her land. Evidence
susceptible of two opposite inferences is no more than a scintilla of evidence and cannot support
a judgment. Tubelite v. Risica & Sons, Inc., 819 S.W.2d 801, 805 (Tex. 1991); Litton Indus.
Prods., Inc. v. Gammage, 668 S.W.2d 319, 324 (Tex. 1984).

 Second, James introduced a letter that he wrote to Trudy in July 1990 asking for
reimbursement for services he had previously performed on the homeplace. James apparently
argues that the letter qualifies as evidence supporting reimbursement for the work he subsequently
performed on the homeplace in October 1990 and in 1991. We disagree. The letter clearly
indicates that James wanted to be reimbursed for services he had performed earlier in 1990
without Trudy's knowledge. The letter does not, however, indicate that James would continue
performing those services. We quote the letter in relevant part:



I have been assured that you have received a bill for . . . spraying the homeplace. 
In order to hold my head up in the community I have paid this bill. Now, Mark
is just completing with a fertilization program . . . . I will be expected to pay this
bill also. These bills are the reason I was opposed to go in the CRP program. 
These type bills will not stop after the first year or two in spite of what you have
been led to believe by that fathead in the [Agricultural Stabilization and
Conservation Service] office. I really expect that the annual maintenance cost to
stay in the CRP program is going to level off at approx 20% of the payment. . . . 
Your [share] of the above named expenses now total approx $9344.00. These are
all paid except fertilizer bill. It will be paid as soon as it becomes ten days past
due.



The remainder of the letter entails an eager offer to purchase the homeplace from Trudy, in which
James urges Trudy to evaluate her selling price in light of the costs associated with maintaining
the homeplace. We hold that the letter provides no more than a scintilla of evidence that Trudy
knew James would continue to provide services and expect to be paid. The letter never states that
James will continue his work. Indeed, an inference may be drawn that since James never received
the demanded reimbursement, he would not be performing any services in the future. Certainly
the letter does not indicate that he would be seeking reimbursement in the future. The letter only
states that James had paid bills for past services and wanted Trudy to repay him. Although James
mentioned future costs to maintain the homestead, he in no way indicated that he would be
incurring those costs. Indeed, the most plausible inference from James' discussion of the costs
is that he wanted Trudy to rethink her selling price in light of future maintenance expenses. Thus,
even if the letter could plausibly be read to imply that James would continue his work, the
existence of two opposite inferences prevents the letter from being anything more than a mere
scintilla of evidence. Tubelite, 819 S.W.2d at 805; Litton Indus. Prods., 668 S.W.2d at 324.

 James argues that the CRP contract is evidence to support his reimbursement claim. 
James contends that the terms of the contract required him to maintain Trudy's homeplace in order
to receive payments for his own land under the same contract, and therefore he had a reasonable
basis for performing the work. We disagree. Even if the CRP does condition James' payments
for his own land on the status of the homeplace, (3) that fact is irrelevant to James' quantum meruit
claim against Trudy. The CRP only establishes James' rights and responsibilities with respect to
the U.S. government; it gives him no rights against Trudy. To prevail against Trudy in quantum
meruit, James must establish that Trudy accepted his services in circumstances indicating to her
that he expected to be paid. The CRP, at the very most, establishes that James felt he needed to
work on the homeplace to preserve his rights. The CRP in no way establishes that Trudy knew
about or accepted those services.

 For the reasons given, we hold that the record contains no evidence to support
James' quantum meruit claim for services performed on the homeplace. We therefore sustain
Trudy's first point of error.



Tortious Interference

 In her second point of error, Trudy argues that the trial court erred by rejecting her
claim that James tortiously interfered with a prospective mineral lease for the homeplace. Trudy
contends that she established her claim as a matter of law by providing conclusive evidence to the
trial court. In deciding a legal-sufficiency point of error that attempts to overcome an adverse fact
finding as a matter of law, we must first consider only the evidence and inferences tending to
support the finding of the trier of fact and disregard all evidence and inferences to the contrary. 
If there is no evidence to support the finding, we must then examine the entire record to see if the
contrary proposition is established as a matter of law. Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982); see Texas & N.O.R.R.
v. Burden, 203 S.W.2d 522, 528-31 (Tex. 1947); Powers & Ratliff, supra, 69 Tex. L. Rev. at
523.

 Before turning to the record, we must frame our inquiry with the elements of
Trudy's cause of action. The elements of a tortious interference claim are: (1) an existing or
prospective contract; (2) willful and intentional interference with that contract; (3) which
proximately caused harm to the plaintiff; and (4) actual damages or loss. See Texas Beef Cattle
Co. v. Green, No. 94-1004, slip op. at 11 (Tex. Jan. 11, 1996); Sterner, 767 S.W.2d at 689; Doe
v. Smithkline Beecham Corp., 855 S.W.2d 248, 258 (Tex. App.--Austin 1993), judgment reformed
on other grounds and affirmed, 903 S.W.2d 347 (Tex. 1995). The defendant in a tortious
interference claim may avoid liability by proving, as an affirmative defense, a privilege or
justification for the interference. Texas Beef Cattle Co., slip. op at 11-13; Sterner, 767 S.W.2d
at 689-90. Trudy argues that she need only address the four elements of her claim because James
did not plead the affirmative defense of privilege or justification for his interference. We agree. 
Privilege or justification for interference with a contract is an affirmative defense that must be
pleaded and proved by the defendant pursuant to Texas Rule of Civil Procedure 94. Texas Beef
Cattle Co., slip. op at 11-12; Sterner, 767 S.W.2d at 689-90. By failing to plead such a defense
in the trial court, James waived it. Tex. R. Civ. P. 94; Shoemake v. Fogel, Ltd., 826 S.W.2d
933, 937 (Tex. 1989); Tacon Mechanical Contractors, Inc. v. Grant Sheet Metal, Inc., 889
S.W.2d 666, 671 (Tex. App.--Houston [14th Dist.] 1994, writ denied). We therefore examine the
record only to determine whether Trudy conclusively established the elements of her claim.

 After the divorce decree was rendered, Trudy began negotiating a possible mineral
lease for the homeplace with J. Roger Allspaugh, agent for the potential lessee. Trudy and
Allspaugh agreed on the terms of the lease, and Allspaugh mailed Trudy a draft of the lease for
her signature on July 7, 1991, along with two bank drafts totalling $8892 for the agreed "bonus"
consideration. James learned of the negotiations and, on July 31, 1991, filed an affidavit in the
Hardeman County deed records to oppose the lease. In his affidavit, James noted that the
homeplace had been awarded to Trudy under the divorce decree, but he opined that he still owned
the homeplace because he had appealed the divorce to this Court. (4) James stated that he understood
Trudy planned to enter into a mineral lease for the homestead and noted that he opposed the lease
based on his alleged continuing ownership interest in the homeplace.

 On August 9, 1991, Trudy's attorney Rob Robertson wrote to Allspaugh, noting
that he had deposited the drafts and would return the signed lease to Allspaugh shortly. Robertson
indicated that he had received James' affidavit and urged Allspaugh to go through with the deal
despite James' actions. On August 15, 1991, James' attorney wrote Allspaugh directly to state
James' opposition to the lease. As result of James' actions, Allspaugh's client decided not to
execute the lease. Allspaugh wrote Robertson on September 23, 1991, to call off the deal, noting
that his client was unwilling to proceed because James' actions cast doubt on the title to the
homeplace.

 We hold that this evidence conclusively establishes Trudy's claim that James
tortiously interfered with her potential mineral lease. Because Allspaugh sent Trudy a lease for
signature and the drafts for her bonus consideration, it is clear that the terms of the lease were set
and that the lease would have been executed but for James' actions. James' actions amounted to
intentional interference with the lease. He purposely filed his affidavit and had his attorney write
to Allspaugh for the express purpose of opposing the lease and urging that it not be executed. In
Allspaugh's September 1991 letter to Robertson, he stated that James' actions were the only
reason that Allspaugh's client declined to go forward. Finally, Trudy suffered actual harm by
losing her bonus consideration, which would have been paid if the lease had been executed.

 In response, James argues that he was privileged to oppose the lease because he was
entitled to preserve his potential rights by pointing out the obvious fact that the divorce was on
appeal and therefore he might regain full ownership of the homeplace. Whatever the merits of
his contention, we cannot consider it in reviewing Trudy's point of error. James' argument goes
to establish the affirmative defense of privilege or justification, but James has waived that defense
by failing to plead it in the trial court. Therefore, we end our inquiry after determining that the
interference was intentional; whether it was privileged or justified is not at issue in this appeal. 
We sustain Trudy's second point of error.



Trudy's Remaining Points of Error

 In her third and fourth points of error, Trudy argues that the evidence is factually
insufficient to prove James actually worked on the homeplace and that the trial court erred in
denying her request for a continuance due to surprise evidence presented by James in support of
his quantum meruit claim. Because we have sustained Trudy's no-evidence point on James'
quantum meruit claim, we need not address these points.

 In her fifth point of error, Trudy argues that the trial court erred in failing to file
findings of fact and conclusions of law. As a general rule, in the absence of properly requested
and filed findings of fact, we must imply any findings necessary to support the judgment. Zac
Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987), cert. denied, 484 U.S. 1063
(1988). However, this rule of implication "cannot be invoked when the evidence establishes as
a matter of law the issue to be determined." Id. By sustaining her no-evidence and conclusive-evidence points of error, we have determined that Trudy prevails as a matter of law. The absence
of trial-court findings of fact is therefore moot and irrelevant to the points of error that we have
considered.



CONCLUSION


 We sustain Trudy's first two points of error and hold that: (1) the record contains
no evidence to support James' quantum meruit claim for his agricultural upkeep work on Trudy's
homeplace, and (2) Trudy conclusively proved her claim that James tortiously interfered with her
prospective mineral lease. Therefore, we reverse those portions of the trial court's judgment and
render judgment that: (1) James Ross take nothing by his claim for $17,687.60 in damages for
agricultural services to the homeplace, and (2) that Trudy recover $8,892 in damages for James'
tortious interference with her mineral lease. We affirm the remainder of the trial court's
judgment.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed in Part; Reversed and Rendered in Part

Filed: May 8, 1996

Do Not Publish

1.   Under a CRP contract, the federal government provides subsidy payments to a
farmer who keeps agricultural land in compliance with federal conservation
requirements.
2.   We note that James Ross performed all the work at issue in this appeal after April
1990, when the divorce decree was signed.
3.   Our reading of the CRP indicates that, when a participant in the CRP transfers a
portion of the land subject to the CRP, the transferor's rights and responsibilities in the
retained land are unaffected even if the transferred land falls out of compliance with the
CRP.
4.   The record, however, reflects that James did not file a supersedeas bond to suspend
enforcement of the decree while his appeal was pending.


n that Allspaugh's client declined to go forward. Finally, Trudy suffered actual harm by
losing her bonus consideration, which would have been paid if the lease had been executed.

 In response, James argues that he was privileged to oppose the lease because he was
entitled to preserve his potential rights by pointing out the obvious fact that the divorce was on
appeal and therefore he might regain full ownership of the homeplace. Whatever the merits of
his contention, we cannot consider it in reviewing Trudy's point of error. James' argument goes
to establish the affirmative defense of privilege or justification, but James has waived that defense
by failing to plead it in the trial court. Therefore, we end our inquiry after determining that the
interference was intentional; whether it was privileged or justified is not at issue in this appeal. 
We sustain Trudy's second point of error.



Trudy's Remaining Points of Error

 In her third and fourth points of error, Trudy argues that the evidence is factually
insufficient to prove James actually worked on the homeplace and that the trial court erred in
denying her request for a continuance due to surprise evidence presented by James in support of
his quantum meruit claim. Because we have sustained Trudy's no-evidence point on James'
quantum meruit claim, we need not address these points.

 In her fifth point of error, Trudy argues that the trial court erred in failing to file
findings of fact and conclusions of law. As a general rule, in the absence of properly requested
and filed findings of fact, we must imply any findings necessary to support the judgment. Zac
Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987), cert. denied, 484 U.S. 1063
(1988). However, this rule of implication "cannot be invoked when the evidence establishes as
a matter of law the issue to be determined." Id. By sustaining her no-evidence and conclusive-evidence points of error, we have determined that Trudy prevails as a matter of law. The absence
of trial-court findings of fact is therefore moot and irrelevant to the points of error that we have
considered.



CONCLUSION