**TUBELITE, a DIVISION OF INDAL, INC., Petitioner,**

v.

**RISICA & SONS, INC., Respondent.**

No. D–0370.

Supreme Court of Texas.

Dec. 11, 1991.

Robert McLeaish, McAllen, for petitioner.

Sidney R. Meadows, Frank J. Enriquez, McAllen, for respondent.

## OPINION

CORNYN, Justice.

At issue is whether an agreement to pay interest arose under the Uniform Commercial Code because of a course of dealing between two merchants. Finding that the parties' course of dealing established an implied agreement to pay interest, the trial court rendered judgment for Tubelite, a Division of Indal, Inc. ("Tubelite") and dismissed the counterclaim of Risica & Sons, Inc. ("Risica") for penalties under the usury statute. TEX.REV.CIV.STAT.ANN. art. 5069–1.06 (Vernon 1987). The court of appeals, however, found no evidence of an implied agreement to pay interest, and reversed the judgment of the trial court and rendered judgment for Risica on its counterclaim. 794 S.W.2d 468, 470–71 (Tex. App.1990). We affirm the judgment of the court of appeals.

Risica, a subcontractor, received a price quotation for fabricated materials from Tubelite to be used in a construction bid. The quotation was written on a form supplied by Tubelite containing printed terms ex-pressly limiting acceptance to the terms of the quotation. It also contained an objection to any different terms that might be proposed by the buyer. Significantly, the quotation did not contain any credit terms for late payments. The quotation was signed by Tubelite's representative.

Risica accepted Tubelite's bid and sent Tubelite a written notice, in March 1985, asking Tubelite to begin work on the shop drawings. Later, Tubelite sent Risica an "acknowledgment" stating "[a]cceptance hereof is expressly limited to acceptance of the terms and conditions appearing on the front and reverse side hereof" in bold type capital letters. On the reverse side was printed, "[p]ast due invoices will be subject to a Service Charge of 1½% Per Month at an Annual Rate of 18%." With each shipment Tubelite sent Risica an invoice containing the notation "past due invoices will be subject to a service charge." On each monthly statement of account Tubelite notified Risica that "a finance charge is computed at the rate of 1.5% per month A.P.R. of 18% on all amounts more than 15 days past due." However, Tubelite did not actually begin charging interest until after April 30, 1986. Although Risica never objected to the interest terms added by Tubelite in its acknowledgements and statements of account, it never paid any of the late charges either. In fact, Tubelite credited all payments received from Risica to the principal balance and none to interest charges.

In March 1988, Tubelite filed suit against Risica seeking the outstanding principal balance of $42,920.25 and prejudgment interest "at the rate of 6% (percent) per year on the account, commencing on the thirtieth day from and after the sum is due and payable, until the date of judgment."[1] Risica answered and counterclaimed for usury penalties under article 5069–1.06, contending that Tubelite was limited to the

---

1. This language tracks the language contained in article 5069–1.03 of the Texas Revised Civil Statutes which sets the ceiling on the legal rate of interest to be charged when no specified rate of interest is agreed upon by the parties and is the rate commonly applied in open and sworn account cases. The article provides:

> When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

legal rate of interest set by article 5069–1.03 and further alleging that Tubelite had charged Risica interest in excess of twice the amount allowed under the statute. Tubelite responded that the course of dealing between the parties created an implied agreement to pay interest.

In a bench trial, the court agreed with Tubelite. Accordingly, it rendered judgment that Tubelite recover the principal amount of $32,920.25[2] together with prejudgment interest in the amount of $9,768.17, calculated at the rate of one and one-half percent per month. It denied all relief requested by Risica. The court of appeals, however, found no evidence to support the trial court's finding of an implied agreement to pay interest. 794 S.W.2d at 470. Because we hold that the contract formed between the parties contained no provision for late charges and that the subsequent course of dealing of the parties was insufficient to modify the contract, we affirm the judgment of the court of appeals.

The transaction at issue is governed by the Uniform Commercial Code. TEX.BUS. & COM.CODE §§ 2.101–2.725.[3] The parties stipulated that each was a merchant as defined by the Code.[4] The quotation dated February 5, 1985, delivered to Risica by Tubelite was a firm offer because the printed terms on Tubelite's form provided that the quotation would remain "valid" for sixty days from its date and the quotation was signed by Tubelite's authorized agent. *See id.* § 2.205. The quotation did not limit acceptance to any specified manner or medium, but did require acceptance of all terms and conditions contained in the quotation. Tubelite's quotation invited acceptance in any manner and by any medium reasonable under the circumstances. *See* TEX.BUS. & COM.CODE § 2.206(a)(1).

■ Risica's letter of March 25, because it did not contain any additional or different terms, was an unconditional acceptance of Tubelite's firm offer. The contract between the parties was formed at the time Risica accepted Tubelite's offer and consisted only of those terms contained in Tubelite's quotation of February 5. *See Graham Paper Co. v. Schottco Corp.*, 555 F.2d 193, 197 (8th Cir.1977); *Earl M. Jorgensen Co. v. Mark Constr. Inc.*, 56 Haw. 466, 540 P.2d 978, 983 (1975); *Rochester Plumbing Supply Co. v. A. Burgart, Inc.*, 49 A.D.2d 78, 370 N.Y.S.2d 716, 719–20 (1975).

We distinguish this case from one governed by section 2.207, commonly referred to as the "battle of the forms." Section 2.207 applies only to contract *formation. Migerobe, Inc. v. Certina USA, Inc.*, 924 F.2d 1330, 1335–36 (5th Cir.1991). Specifically, it provides:

§ **2.207. Additional Terms in Acceptance or Confirmation**

(a) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(b) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(1) the offer expressly limits acceptance to the terms of the offer;

(2) they materially alter it; or

---

2. At trial Tubelite conceded that Risica was entitled to a credit in the amount of $10,000.00 on the principal balance claimed for payments made by Risica on the account.

3. All references to the "Code" refer to the Texas Business and Commerce Code, unless otherwise noted.

4. Section 2.104 of the Code defines the term merchant as follows:

(a) "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

(3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(c) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this title.

This section is intended to address two typical situations, one in which agreement has already been reached by the parties, either orally or through informal writings, and is later followed by a formal confirmation containing both terms agreed upon and additional terms not discussed or in which a wire or letter expressed and intended as a confirmation of an agreement adds further minor suggestions or proposals. *Preston Farm & Ranch Supply, Inc. v. Bio–Zyme Enters.*, 625 S.W.2d 295, 299 (Tex.1981); TEX.BUS. & COM.CODE § 2.207, comment 1.

■ Here, the written offer and acceptance occurred before the forms containing the additional term were sent. Tubelite's quotation contained the terms of the offer, including a detailed list of materials to be supplied, specifications and a total price. The acknowledgments that followed were not a formal confirmation of parties' agreement because they did not contain the terms specifically negotiated and agreed to by the parties. The first acknowledgment was prepared contemporaneously with partial shipment of the materials to be supplied under the contract. Similar documents were forwarded by Tubelite for subsequent shipments of materials listed in the original quotation. We hold that these documents are not confirmations of the parties' agreement, but rather are record keeping devices detailing that portion of the goods shipped by Tubelite in performance of its contract with Risica. Nor, we

hold, are the statements of account sent by Tubelite to Risica after delivery of the goods confirmations within the meaning of section 2.207 of the code. *Preston Farm*, 625 S.W.2d at 299–300.

Section 2.207 applies only when the acceptance contains different or additional terms. Risica's acceptance contained no such terms. Here, the seller made a firm offer expressly limited to the terms contained in the offer, and after unconditional acceptance by the buyer, sought to add additional terms in shipping documents. Such additional terms contained in forms transmitted subsequent to contract formation do not become a part of the contract under section 2.207. *See Graham Paper Co.*, 555 F.2d at 197.

■ Tubelite, however, contends that the conduct of the parties gave rise to an implied agreement to pay interest under section 2.204(a). But this section too addresses only contract *formation. Preston Farm*, 625 S.W.2d at 298; TEX.BUS. & COM.CODE § 2.204(a). This code provision is inapplicable once the contract has been formed, as was this contract when Risica unconditionally accepted the terms of Tubelite's quotation.

■ Finally, we consider whether post contract formation conduct of the parties is sufficient to modify the terms of the agreement to include payment of late charges. The code defines course of dealing as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." TEX.BUS. & COM.CODE § 1.205.[5] An implied agreement, whether it arises under the common law or the Code, is one in which "the acts of the parties are such as to indicate according to the ordinary course of dealing and ... common understanding of ... a *mutual* intention to contract." *Preston Farm*, 625 S.W.2d at 298 (quoting *Marr–Piper Co. v. Bullis*, 1 S.W.2d 572,

---

**5.** Section 2.208 renders the definition of course of dealing contained in chapter 1 of the Code applicable to contracts for the sale of goods governed by chapter 2. TEX.BUS. & COM. CODE § 2.208(b).

575 (Tex.Comm'n App.1928, judgm't adopted)) (emphasis added). Acquiescence to the contract by the party to be charged may be implied from his affirmative actions, such as when he continues to order and accept goods with the knowledge that a service charge is being imposed and pays the charge without timely objection. *Preston Farm*, 625 S.W.2d at 298. But the mere failure to object to the unilateral charging of interest, without more, does not establish an agreement to pay interest between the parties. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 445 (Tex.1982) (interpreting *Preston Farm*).

 The only documents contained in the record that were sent by Tubelite to Risica after January 1986 are statements of account. The record does not disclose that goods were ordered, received or accepted by Risica under the contract after December 1985. Several months later, after April 30, 1986, Tubelite began adding a late charge to the statements of account sent to Risica. Risica did not formally object to these charges. This amounts to nothing more than the unilateral charging of interest. We hold that Risica's failure to formally object to the unilateral addition of a late charge will not support a finding of implied modification of the existing contract. *In re Charter Co.*, 913 F.2d 1575, 1580–81 (11th Cir.1990); *Triton Oil*, 644 S.W.2d at 445 (interpreting *Preston Farm*).

After Tubelite began adding the interest charges to the statements of account, Risica made five partial payments of $2,000.00 each. The payment of interest charges is some evidence, albeit circumstantial, of the existence of an agreement to pay interest. But when the payment on the account is a partial payment that does not exceed the principal amount due, the fact of the partial payment is no evidence of an agreement to pay interest. This is because the fact of partial payment is equally consistent with either of two inferences: 1) that the payor intended to pay the interest charged because an agreement to pay interest exists or 2) the payor intended the payment to reduce only the principal amount due and not to pay the interest charged because no agreement to pay interest exists. When the circumstances are equally consistent with either of two facts, neither fact may be inferred. *Litton Indus. Products v. Gammage*, 668 S.W.2d 319, 324 (Tex.1984). Thus, under these facts there is no evidence of a mutual intention to modify the contract to include an interest term.

Because there was no agreement to pay interest, the court of appeals correctly held that the statutory rate of six percent is read into the agreement by law. 794 S.W.2d at 470. The rate of interest charged by Tubelite was eighteen percent which the court of appeals found to be more than twice the rate allowed by law in violation of article 5069–1.06. TEX.REV. CIV.STAT.ANN. art. 5069–1.06 (Vernon 1987). Thus, the court of appeals correctly imposed the penalties prescribed by statute for the charging of usurious interest. We therefore affirm its judgment.