# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-02-00292–CV

---

**Strasburger Enterprises, Inc. d/b/a Strasburger Farms/TDGT Limited Partnership, Appellants**

**v.**

**TDGT Limited Partnership and Mutual Service Casualty Insurance Company/Strasburger Enterprises, Inc. d/b/a Strasburger Farms, Appellees**

---

**FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT NO. 175,988-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING**

---

## O P I N I O N

Strasburger Enterprises, Inc., d/b/a Strasburger Farms ("Strasburger") appeals a district-court judgment awarding TDGT Limited Partnership ("TDGT") damages pursuant to a usury finding against Strasburger. Strasburger also seeks a reversal of a take-nothing judgment against TDGT's surety, Mutual Service Casualty Insurance Company ("Mutual"). TDGT appeals the district-court award of breach-of-contract damages in favor of Strasburger and argues that the district court erred in its calculation of the usury damages. We will affirm in part and reverse and remand in part.

## BACKGROUND

In August 1998, Strasburger deposited 1,589,700 pounds of milo in a public grain warehouse owned by TDGT, a Texas Department of Agriculture (the "Department") licensed warehouseman. To obtain licensing, TDGT had secured an $80,000 warehouse bond from Mutual. *See* Act of May 22, 1981, 67th Leg., R.S., ch. 388, § 1, 1981 Tex. Gen. Laws 1044, 1048 (amended 1987 & 2001) (current version at Tex. Agric. Code Ann. § 14.031 (West Supp. 2003)) (requirements for securing bond). TDGT issued Strasburger two warehouse receipts, which Strasburger could exchange for milo at any time. Strasburger endorsed and delivered both warehouse receipts to Bell County Farm Service Agency as security for an agricultural loan. In early 1999, Strasburger agreed to sell TDGT the two warehouse receipts in order that TDGT could satisfy a milo delivery contract with Tyson Foods. In exchange, TDGT agreed to pay Strasburger $57,229.20 or $3.60 per hundred weight. In late February, Strasburger repaid its agricultural loan, obtained possession of the warehouse receipts, and delivered them to TDGT.[1]

The Strasburger-TDGT contract stated that the $57,229.20 was "due and payable" on March 15; however, TDGT defaulted. On May 19, Strasburger, by letter, demanded payment for the agreed-upon price plus "interest at 10%"; Strasburger also made a written demand upon the Department for action under the provisions of Mutual's bond. In response to Strasburger's demand, TDGT sent Strasburger notice of violation of the finance code's usury provisions. *See* Tex. Fin. Code Ann. §§ 302.001, .002, 305.001, .002 (West Supp. 2003) (defining usurious rates and

---

[1] The warehouse receipts were marked "cancelled 2-16-99." The record indicates that the warehouse receipts were back-dated to account for TDGT's shipment of grain to Tyson before TDGT actually held title to the grain.

penalties). Strasburger sued TDGT on the contract and TDGT's surety Mutual on the bond. About one and a half months later, TDGT declared bankruptcy.[2] Following a bench trial, the district court rendered judgment for Strasburger "for the principal sum of $57,229.20, plus prejudgment interest of $9,536.34, plus . . . attorney's fees in the amount of $20,000.00, . . . for a total recovery of $86,765.54 . . . ." The district court also rendered judgment for TDGT on its usury counterclaim for $2146.50, plus $3000 in attorney's fees. After offsetting TDGT's award, Strasburger was left with a net recovery of $81,619.04. Finally, the court ordered that Strasburger take nothing against Mutual. Strasburger and TDGT both appeal the district-court judgment.

## DISCUSSION

**Mutual's Liability**

This action was tried before the district court on stipulated facts.[3] Under such circumstances, the trial court and the reviewing court generally may not find any facts not conforming to the agreed statement, unless provided otherwise in the agreed statement. *State Bar v. Faubion*, 821 S.W.2d 203, 205 (Tex. App.—Houston [14th Dist.] 1991, writ denied). Accordingly, we will review only the correctness of the district court's application of law to the stipulated facts, and we will not infer or find any facts not shown by the parties' stipulation. *See*

---

[2] The bankruptcy court lifted the automatic stay as to Strasburger and its breach-of-contract claim. *See In re TDGT Limited Partnership*, No. 01-10547-FRM (Bankr. W.D. Tex. July 16, 2001) (order terminating stay).

[3] "Parties may submit matters in controversy to the court upon an agreed statement of facts filed with the clerk, upon which judgment shall be rendered as in other cases; and such agreed statement signed and certified by the court to be correct and the judgment rendered thereon shall constitute the record of the cause." Tex. R. Civ. P. 263.

3

*Rabinowitz v. Cadle Co. II, Inc.*, 993 S.W.2d 796, 797 (Tex. App.—Dallas 1999, pet. denied);

*Gibson v. Drew Mortgage Co.*, 696 S.W.2d 211, 213 (Tex. App.—Houston [14th Dist.] 1985, writ

ref'd n.r.e.).

By its first issue, Strasburger argues that the district court's take-nothing judgment

against Mutual should be reversed because Mutual, as TDGT's surety, is liable on the bond.

Specifically, Strasburger argues: (1) the agriculture code requires Mutual to pay TDGT's contractual

obligations, and (2) it is entitled to rescission and may sue on TDGT's original bonded obligation

because TDGT "wholly repudiated" its obligation to pay Strasburger. Mutual rejoins that the bond

does not cover the contract between Strasburger and TDGT either under the code or because of

rescission.

*The Agriculture Code*

In examining Strasburger's first argument, we construe the provisions of the

agriculture code in effect at the time the dispute arose.[4] Under well-settled principles of statutory

---

[4] The legislature, in 1953, enacted article 5577a to govern "public grain warehouses." *See* Act of April 23, 1953, 53d Leg., R.S., ch. 106, 1953 Tex. Gen. Laws 385. In 1969 the legislature enacted 5577b, which was known as the "Public Grain Warehouse Act"; this article supplemented article 5577a. *See* Act of May 29, 1969, 61st Leg., R.S., ch. 811, 1969 Tex. Gen. Laws 2145. In 1981 the legislature codified these two sections in chapter 14, subchapter A, of the agriculture code. *See* Act of May 22, 1981, 67th Leg., R.S., ch. 388, § 1, 1981 Tex. Gen. Laws 1044, 1068 (amended 1983, 1987, 1989, 1991, 1993 & 1995). In 2001 chapter 14 was amended again, and its sections were renumbered and reorganized. *See* Act of May 17, 2001, 77th Leg., R.S., ch. 1124, § 1, 2001 Tex. Gen. Laws 2484, 2484 (current version at Tex. Agric. Code Ann. §§ 14.001-.088 (West Supp. 2003) (Regulation of Public Grain Warehouse Operators)) ("The changes in law made by this Act apply only . . . on or after the effective date of this Act."). The events germane to this appeal occurred in 1998 and 1999; therefore, the applicable agricultural code provisions are those in effect at that time.

construction, we must presume that the legislature intended each word to have a purpose. *K.B. v. N.B.*, 811 S.W.2d 634, 637 (Tex. App.—San Antonio 1991, writ denied) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)). Every word, sentence, clause, and phrase should be given effect. *University of Tex. v. Joki*, 735 S.W.2d 505, 508 (Tex. App.—Austin 1987, writ denied) (citing *Ex parte Pruitt*, 551 S.W.2d 706, 709 (Tex. 1977)). Construction of a statute which would make a provision a useless appendage is not favored by law. *Carson v. Hudson*, 398 S.W.2d 321, 323 (Tex. Civ. App.—Austin 1966, no writ).

If the language of a statute is unambiguous, then the court must seek the legislative intent as found in the plain and common meaning of the words and terms used. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex. 1994). Common words should be interpreted as they are commonly used. *Elgin Bank v. Travis County*, 906 S.W.2d 120, 121 (Tex. App.—Austin 1995, writ denied). Construction of a statutory provision may not be done in isolation from the rest of the statute; the act must be considered as a whole and not by interpreting a single sentence or phrase. *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 888 S.W.2d 921, 926 (Tex. App.—Austin 1994, writ denied) (citing *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985)).

As a general rule, a warehouseman's bond is construed in light of the statute which requires it, and the surety's liability is limited to the duties specified by the statute itself. *Republic Underwriters v. Tillamook Bay Fish Co.*, 126 S.W.2d 641, 642 (Tex. 1939) (conducting sale not among statutory duties of warehouseman and failure of warehouseman to remit proceeds not covered under bond); *Aetna Ins. Co. v. Junction Warehouse Co.*, 389 F.2d 464, 468 (5th Cir. 1968)

(warehouseman's default on agreement to sell and deliver grain was statutory duty and covered by bond because scale ticket was issued and issuance of receipts promised).

The agriculture-code provisions are not easily reconciled so that a single interpretation is readily apparent. However, we believe that the critical portion is the code's use of "depositor" in section 14.001. *See* Act of May 22, 1981, 67th Leg., R.S., ch. 388, § 1, 1981 Tex. Gen. Laws 1044, 1046 (amended 2001) (current version at Tex. Agric. Code Ann. § 14.001(1)). Section 14.001(1) defines "depositor" as "a person who: (A) deposits grain in a warehouse for storing, handling, or shipping; (B) is the owner or legal holder of an outstanding receipt for grain; or (C) is lawfully entitled to possession of the grain."[5] *Id.* Section 14.009 requires that each applicant for a license to warehouse grain " shall file or have on file a bond" with the Department. *Id.* at 1048 (amended 2001) (current version at Tex. Agric. Code Ann. § 14.031). Sections 14.009(c) and 14.010(a) and (b), which refer the warehouseman's bond, specifically use the term "depositor." *See id*. at 1048, 1049. Section 14.009(c) states:

The bond must be conditioned on faithful performance of:

(1) each obligation of a warehouseman as to receipted grain and open storage grain . . . ; and

(2) each obligation of a warehouseman under any contract with a *depositor* . . . .[6]

---

[5] "Receipt" is defined as: "a negotiable warehouse receipt issued by a warehouseman licensed under this subchapter." Act of May 22, 1981, 67th Leg., R.S., ch. 388, § 1, 1981 Tex. Gen. Laws 1044, 1046 (amended 2001) (current version at Tex. Agric. Code Ann. § 14.001 (5)).

[6] Agriculture code section 14.0091, added in 1993 and repealed in 2001, states: "The obligations of a warehouseman include the obligation to: (1) deliver a commodity to a person holding a receipt for a commodity stored in the warehouse; and (2) maintain the quantity and quality of a commodity as evidenced by and indicated on a warehouse receipt." Act of May 26, 1993, 73d

*Id.* (emphasis added). Section 14.010 concerns recovery on the bond and liability of warehousemen, and states in part:

(a)   If no action on the bond of a warehouseman is begun before the 31st day after the date of a written demand to the department, a *depositor* has a right of action on the bond for recovery of damages suffered by the *depositor* as a result of the failure of the warehouseman to comply with any condition of the bond.

(b)   Recovery on a bond shall be prorated if claims exceed liability on a bond, but a *depositor* suing on a bond is not required to join other *depositors* in a suit. The burden of establishing proration is on the surety as a matter of defense.

*Id.* at 1049 (amended 2001) (current version at Tex. Agric. Code Ann. § 14.065 (West Supp. 2003)) (emphasis added).

Strasburger relies on *Thomas v. Reliance Insurance Co.*, in which the court interpreted the Texas Grain Warehouse Act, under article 5577b. 617 F.2d 122 (5th Cir. 1980) (construing Act of May 29, 1969, 61st Leg., R.S., ch. 811, 1969 Tex. Gen. Laws 2415 (amended 1981) (current version at Tex. Agric. Code Ann. §§ 14.001-.088)). In *Thomas*, four individuals deposited grain at a warehouse that converted a sizable portion of the deposited grain; the individuals also made contracts for sale of the grain with the warehouse owner, who failed to pay the contracted

---

Leg., R.S., ch. 553, § 2, 1993 Tex. Gen. Laws 2058 (repealed 2001). "Receipted grain" is defined as: "grain that is stored in a public grain warehouse and for which a Texas grain warehouse receipt has been issued and has not been cancelled." Act of May 22, 1981, 67th Leg., R.S., ch. 388, § 1, 1981 Tex. Gen. Laws 1044, 1046 (current version at Tex. Agric. Code Ann. § 14.001(8)). "Open storage grain" is defined as grain that: "(1) is received for storage by a public grain warehouse; (2) is not covered by a negotiable warehouse receipt; and (3) is not owned by the warehouse in which it is stored." *Id.* (current version at Tex. Agric. Code Ann. § 14.001(3)). According to these definitions, after the execution of the Strasburger-TDGT contract and cancellation of the receipts, the milo was neither "receipted" nor "open storage" grain.

amount. *Id.* at 124-25. None of the appellants received warehouse receipts. *Id*. at 125. The appellants sued the warehouse's surety for the warehouse's conversion and default on payment, and the trial court permitted recovery against the surety for the grain that was misappropriated but not the grain sold under the contract. *Id.* The appellate court affirmed, primarily basing its decision on the definition of "public grain warehouse," but the appellants' status as "depositors" factored into the decision as well.[7] *Id.* at 126-27. In holding that the *Thomas* appellants were not depositors under the article's definition, the court opined: "Clearly, once [the appellants] sold their grain [the warehouse] was no longer storing, handling or shipping it for them. It no longer belonged to them." *Id.* at 127. Strasburger's reliance on *Thomas* is misplaced.

Strasburger urges that we focus on other code definitions and language while minimizing reliance on the legislature's definition and use of "depositor." We decline to follow Strasburger's interpretation; rather, we believe Strasburger's situation is similar to that of the appellants in *Thomas*. Strasburger clearly was a depositor under the code's definition when it delivered the milo for storage in TDGT's warehouse. Upon delivery, Strasburger obtained warehouse receipts from TDGT, a bonded warehouse. Strasburger was entitled to recover the milo upon presentation of the receipts to TDGT. This relationship was that of a bailor and bailee. *See Kimbell Milling Co. v. Greene*, 162 S.W.2d 991, 996 (Tex. Civ. App.—Fort Worth 1942), *aff'd*, 170 S.W.2d 191 (Tex. 1943) (holding relation of bailor and bailee existed between storer of wheat and

---

[7] Article 5577b's definition of "public grain warehouse" is different than that of the agriculture code; however, article 5577b's definition of "depositor" is substantially the same. *Compare* Act of May 29, 1969, 61st Leg., R.S., ch. 811, 1969 Tex. Gen. Laws 2145, 2145-46, *with* Act of May 22, 1981, 67th Leg., R.S., ch. 388, § 1, 1981 Tex. Gen. Laws 1044, 1046.

operator of grain elevator). Strasburger later contracted to sell the milo to TDGT and surrendered

its two warehouse receipts to TDGT, thus ending Strasburger's status as a depositor and bailor under

section 14.001(1). *See* Act of May 22, 1981, 67th Leg., R.S., ch. 388, § 1, sec. 14.001(1), 1981 Tex.

Gen. Laws 1044, 1046. Recovery on the bond must be made by a "depositor." *See id*. sec. 14.010,

1981 Tex. Gen. Laws 1044, 1049. Strasburger no longer qualified as a depositor because legal title

to the milo passed to TDGT upon Strasburger's surrender of the receipts. Strasburger was no longer

depositing the milo for "storage, handling, or shipping" and therefore was not entitled to possession.

*Id*. at 1046.

*Rescission*

Strasburger also argues that it may sue Mutual on TDGT's original bonded obligation

because TDGT "wholly repudiated" its obligation to pay Strasburger. Because the record reflects

that Strasburger makes this argument for the first time on appeal, we may not consider it. *See* Tex.

R. App. P. 33.1(a). We overrule Strasburger's first issue.

**Usury Violation[8]**

The Strasburger-TDGT contract did not state a specific rate of interest, and no

mention of interest was made until Strasburger's demand for payment. Payment was "due and

---

[8] Because the alleged usurious transaction occurred in May 1999, the applicable code provisions are those in effect at that time. *See Biggs v. Garrett*, 651 S.W.2d 342, 344 (Tex. App.—El Paso, 1983, no writ) (citing *Southwestern Investment Co. v. Hockley County Seed & Delinting, Inc*., 511 S.W.2d 724, 731 (Tex. Civ. App.—Amarillo 1974), *writ ref'd*, 516 S.W.2d 136 (Tex. 1974) (per curiam)).

payable" on March 15, 1999. Strasburger sent a demand letter on May 19 that stated in part: "We have waited patiently for the last 90 days . . . . We must now demand payment for the $57,229.20 plus interest at 10%." Subsequently, Strasburger filed its original petition on June 21, but TDGT did not receive a copy of the petition until July 12. TDGT responded to the May 19 demand on June 25, stating that "[s]uch a demand is in excess of the legal rate of interest allowed by law," and that the letter served as notice of Strasburger's usury violation. The district court found the demand usurious and, as a result, ordered that Strasburger's breach-of-contract award be offset by $2146.50 and attorney's fees.

By its second issue, Strasburger contends that the district court's judgment for TDGT on the usury claim should be reversed. TDGT, by its only issue, appeals the judgment as well, contending that the district court erred in its application of the finance-code usury provisions. We turn to Strasburger's contentions first. Chapter 302 of the finance code defines usurious interest rates,[9] and chapter 305 provides for civil and criminal penalties for charging such interest.[10] *See* Tex. Fin. Code Ann. §§ 302.001, .002, 305.001, .002.

---

[9] The current version of chapter 302 does not differ materially from the former version in effect at the time of the district-court trial. *Compare* Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 1, 1997 Tex. Gen. Laws 3091, 3420-21 and 3437, *with* Tex. Fin. Code Ann. §§ 302.001, .002 (West Supp. 2003). We will cite the current provisions for convenience.

[10] Section 305.001 does not differ materially from the former version in effect at the time of the district-court trial. *Compare* Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 1, 1997 Tex. Gen. Laws 3091, 3437, *with* Tex. Fin. Code Ann. § 305.001 (West Supp. 2003). We will cite the current provision for convenience. Section 305.002 is substantially different from the current code provision; therefore, we will cite the 1997 code provision. *Compare* Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 1, 1997 Tex. Gen. Laws 3091, 3437, *with* Tex. Fin. Code Ann. § 305.002 (West Supp. 2003).

*Whether Strasburger's Charge of Interest Was Usurious*

Strasburger argues that: (1) in charging ten percent per annum, it did not charge a usurious rate, and (2) it timely cured any usury violation. We disagree. Section 305.001 imposes liability when contracting for, charging, or receiving interest that is greater than the amount authorized by law. *Id*. § 305.001(a). The solicitation, through a demand letter, of interest exceeding that allowed by law may constitute a "charge" for purposes of section 305.001. *Hoxie Implement Co., Inc. v. Baker*, 65 S.W.3d 140, 146 (Tex. App.—Amarillo 2001, pet. denied) (citing *Woodcrest Assocs., Ltd. v. Commonwealth Mortgage Corp.*, 775 S.W.2d 434, 437 (Tex. App.—Dallas 1989, writ denied)).[11] All depends on the intent of the letter. *See National Bond & Inv. Co. v. Atkinson*, 254 S.W.2d 885, 888 (Tex. Civ. App.—Amarillo 1952, writ dism'd w.o.j.) (allowing admission of parol evidence to determine whether parties intended to make usurious loan). "Intent" does not mean an intent to engage in usury, but rather the intent to assess the rate charged. *William C. Dear & Assocs., Inc. v. Plastronics, Inc.*, 913 S.W.2d 251, 254 (Tex. App.—Amarillo 1996, writ denied); *see Cochran v. American Sav. & Loan Ass'n*, 586 S.W.2d 849, 850 (Tex. 1979) (focus is upon intent to make bargain as opposed to intent to charge usurious interest rate).

The document containing the allegedly usurious demand is the primary source from which to devine the drafter's intent; parol evidence may be utilized as well. *Hoxie Implement*, 65

---

[11] The applicable language in former revised civil statute article 5069-1.06 is identical to section 305.001. *Compare* Act of May 24, 1979, 66th Leg., R.S., ch. 707, § 1, 1979 Tex. Gen. Laws 1718, 1718, *with* Tex. Fin. Code Ann. § 305.001.

S.W.3d at 146. The document must be considered as a whole. *Id.* Furthermore, if susceptible to two or more reasonable but differing interpretations, the interpretation adopted must be that which renders the document nonusurious, because we presume that the parties intended to comply with the law. *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 341 (Tex. 1980) (contract not usurious unless it expressly entitles lender to exact interest greater than that allowed by law); *Hoxie Implement*, 65 S.W.3d at 146. Finally, we may find usury only when it can be said from a fair and reasonable construction of the document that the demanding party intended to levy the interest rate charged, which exceeds that allowed by law. *Id.*

It is undisputed that Strasburger demanded "interest at 10%"; however, Strasburger contends that interest at ten percent per annum is not usurious. The parties' contract did not specify a rate of interest, thus section 302.002 controls. *See* Tex. Fin. Code Ann. § 302.002. Section 302.002 states that when no interest rate is agreed upon, "interest at the rate of six percent per year" is permitted "beginning on the 30th day after the date on which the amount is due." *Id.* In *Tubelite v. Risica & Sons, Inc.*, the supreme court held that a rate greater than six percent, when the parties specify no rate, is usurious.[12] 819 S.W.2d 801, 805 (Tex. 1991). Risica, a subcontractor, accepted Tubelite's bid for a construction contract, but no credit terms for late payments were specified. *Id.* at 802. After acceptance, Tubelite sent Risica an acknowledgment with additional terms, including

---

[12] The *Tubelite* court reviewed article 5069-1.03, which was a predecessor to section 302.002. Article 5069-1.03 states: "When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable." Act of May 24, 1979, 66th Leg., R.S., ch. 707, § 1, 1979 Tex. Gen. Laws 1718, 1718 (amended 1997 & 1999) (current version at Tex. Fin. Code Ann. § 302.002).

12

a provision for one-and-one-half percent per month past-due service charge for an annual rate of eighteen percent. *Id.* The invoices sent with each shipment to Risica also contained a provision that past-due invoices would be subject to a service charge of "1½ % Per Month at an Annual Rate of 18%." *Id.* Eventually, Tubelite began charging interest on Risica's unpaid balance. *Id.* Risica failed to pay and Tubelite sued; Risica counterclaimed for usury. *Id.* Risica alleged that Tubelite was charging twice the allowed six percent under the article. *Id.* at 803. Tubelite argued that the parties' course of dealings created an implied agreement to pay interest because Risica never objected to the charges or interest provisions, and the trial court agreed. *Id.* The supreme court held that there was no implied agreement and that "the statutory rate of six percent is read into the agreement by law." *Id.* The court stated that Tubelite's eighteen percent per annum rate of interest charged on Risica's account was "more than twice the rate allowed by law." *Id.* In other words, if ten percent is the rate at which interest becomes usurious, as TDGT argues, then the eighteen percent charged by Tubelite would not have been more than twice the allowable rate.

Other cases interpreting the finance code also hold that six percent is the maximum allowable rate, absent an agreement. *See, e.g.*, *Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters.*, 625 S.W.2d 295, 297 (Tex. 1981) ("This six percent charge is the maximum rate allowed by law on an open account where the parties do not agree to another amount."); *Dunnam v. Burns*, 901 S.W.2d 628, 632 (Tex. App.—El Paso 1995, no writ) ("The 6 percent ceiling does not apply to a loan transaction if an interest rate can be determined from the language of the contract or from the parties' course of conduct.").

13

Strasburger, however, relies on *Bruner v. Republic Supply Co.* for the proposition that an interest rate between six and ten percent is not usurious. 416 F.2d 763, 765 (5th Cir. 1969). In *Bruner*, Republic charged Bruner an interest rate of over seven percent per annum. *Id.* The parties had not specified an interest rate.[13] *Id.* The court held that Bruner was not entitled to double recovery for Republic's charge of over six percent interest. *Id.* In denying a motion for rehearing, the court opined: "We held that Article 5070 does not declare rates between 6% and 10% to be usurious or supersede or amend Article 5073 and that under the statutes the parties had no action for double recovery unless the amount received or collected was 10% per annum or more." *Id.* at 766. *Bruner* is distinguishable for several reasons: (1) the *Bruner* court held that the case was not tried on the theory of whether the plaintiffs could recover for interest charged in excess of six percent under article 5070, because they only sought double recovery under article 5073;[14] (2) the supreme court in *Houston Sash & Door Co., Inc. v. Heaner*, 577 S.W.2d 217, 220 (Tex. 1979), distinguished *Bruner*, stating that "*Bruner* interpret[ed] former statutes . . . of little value";[15] (3) Strasburger's

---

[13] *Bruner* applied previous article 5070, which stated: "When no specified rate of interest is agreed upon by the parties, interest at the rate of six per cent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable . . . ." Act of April 9, 1892, 22nd Leg., 1st C.S., ch. 6, § 1, 1892 Tex. Gen. Laws 368, 368-69, *repealed by* Act of May 8, 1967, 60th Leg., R.S., ch. 274, § 5, 1963 Tex. Gen. Laws 608, 659-60 (originally delineated as articles 2976 and 2977, renumbered articles 4977 and 4978 respectively, renumbered and combined into article 5070 in 1925, Tex. S.B. 84, 39th R.S. (1925)).

[14] Article 5073 provided in part: "but if no other rate is so fixed, than [sic] ten per centum (10%) per annum, shall have been received or collected upon any contract, the person paying the same . . . may by an action of debt recover double the amount of such interest [so paid]." Act of May 7, 1963, 58th Leg., R.S., ch. 205, § 28, 1963 Tex. Gen. Laws 550, 569, *repealed by* Act of May 8, 1967, 60th Leg., R.S., ch. 274, § 5, 1963 Tex. Gen. Laws 608, 659-60.

[15] *Houston Sash & Door Co., Inc. v. Heaner*, 577 S.W.2d 217, 220 (Tex. 1979), was decided under articles 5069-1.01, et seq., which replaced the articles examined in *Bruner v. Republic Supply*

demand letter requested "interest at 10%," which is "10% per annum or more" and is usurious even under *Bruner*; and (4) the supreme court's holding in *Tubelite* that eighteen percent was "more than twice the rate allowed," means that a rate of over six percent constitutes usury, not a rate of ten percent or greater.  We overrule Strasburger's contention.

*Whether Strasburger Cured the Usury Violation*

Next, Strasburger asserts that it cured any usury violation by filing its original petition, which sought only interest at "the rates provided by law."  However, the sequence of events shows otherwise.  Strasburger's demand letter was dated May 19, and TDGT sent its notice of usury violation to Strasburger on June 25.  Strasburger filed its original petition on June 21, and, according to the stipulation, TDGT "was served with citation and a copy of [Strasburger's] First Amended Original Petition on July 12, 1999," well after TDGT's notice of violation to Strasburger.

Section 305.103 provides:

(a)  A creditor is not liable to an obligor for a violation of this subtitle if:

   (1)  not later than the 60th day after the creditor actually discovered the violation, the creditor corrects the violation as to that obligor by taking any necessary action and making any necessary adjustment . . . ; and

   (2)  the creditor gives written notice to the obligor of the violation before the obligor gives written notice of the violation or files an action alleging the violation.

---

*Co.*, 416 F.2d 763, 765 (5th Cir. 1969).  In *Houston Sash & Door* the court noted that "the Legislature substantially modified the penalties applied to usurious transactions."  557 S.W.2d at 220.  The court also wrote that:  "When the obligor has not agreed to a specific rate of interest.[sic] Article 5069-1.03 fixes six percent per annum as the maximum rate of interest allowed."  *Id*. at 221.

. . . .

    (c)  For the purposes of subsection (a), written notice is given when the notice is delivered to the person or to the person's authorized agent or attorney of record personally, . . . or by United States mail to the address shown on the most recent documents in the transaction.

Tex. Fin. Code Ann. § 305.103 (West Supp. 2003).[16]  In *Pagel v. Whatley*, the court construed the current version of section 305.103 to hold that a creditor had complied with the code provision and cured his request for a usurious rate of interest.  82 S.W.3d 571, 577 (Tex. App.—Corpus Christi 2002, pet. denied).  The court held that the creditor had complied with the code because the creditor had: (1) deleted the usurious interest charges on the unpaid account, (2) demanded only the principal amount due, and (3) delivered the petition, with an attached statement, to the debtor acknowledging that the creditor was informed of the "consequences and possibility of a usury violation."[17]  *Id.* at 577-78.  *Pagel's* analysis of section 305.103 is instructive.

        Examining the record and stipulated facts, Strasburger failed to comply with section 305.103 in order to cure the usury violation *before* TDGT sent its notice of violation.  Strasburger gave no notice, written or otherwise, to TDGT aside from the petition delivered on July 12.  In its

---

    **16**  In the former, applicable version of section 305.103, "person" was used instead of "creditor."  *Compare* Acts of May 24, 1997, 75th Leg., R.S., ch. 1008, § 1, 1997 Tex. Gen. Laws 3091, 3438, *with* Tex. Fin. Code Ann. § 305.103 (West Supp. 2003).  Otherwise, the sections are substantially the same, and we will cite to the current provision for convenience.

    **17** A second case brought to this Court's attention interpreting the current version of section 305.103 is *In re Kemper*, 263 B.R. 773 (Bankr. E.D. Tex. 2001).  The court held that "a correction of a usury violation under § 305.103 must be just that—an acknowledgment of the existence of a usury violation accompanied by the adjustment or correction required in order to bring the transaction into compliance with the applicable usury standard."  *Id.* at 783.

16

original petition, Strasburger only asked for "prejudgment and post-judgment interest at rates provided by law," it did not provide any notification that what it had previously demanded was a violation or that the previous demand was potentially usurious or inappropriate. Moreover, section (c) requires that notice: (1) be "delivered to the person or to the person's duly authorized agent or attorney of record personally," or (2) "by United States mail to the address shown on the most recent documents in the transaction." Tex. Fin. Code Ann. § 305.103(c). Strasburger did not comply with this statutory requirement, because TDGT did not receive the original petition until July 12, *after* Strasburger had received TDGT's notice of violation.

Strasburger's contention that its filing of the original petition was sufficient to provide notice and to cure the violation is without merit. The filing of its original petition before TDGT sent its notice simply meant that on June 21 the court, not TDGT, received the information in the petition. In *George A. Fuller Co. v. Carpet Services, Inc.*, the supreme court held that: "There is no indication in the statement of legislative purpose that the legislature intended that the usury laws be applied to pleadings." 823 S.W.2d 603, 604 (Tex. 1992) (interpreting revised civil statute article 5069-1.06(1), (2) as applied to prejudgment interest); *see also* Act of May 8, 1967, 60th Leg., R.S., ch. 274, § 2, 1967 Tex. Gen. Laws 608, 609 (amended 1979, 1997 & 1999) (current version at Tex. Fin. Code Ann. §§ 305.001, .002). Carpet Services pleaded for prejudgment interest on a portion of the contract debt for a period before the debt was due, but such interest was against the contract provisions. *George A. Fuller*, 823 S.W.2d at 603. The trial court found that the petition constituted a usurious charge in excess of twice the legal rate. *Id.* at 603-04. The supreme court affirmed the

17

court of appeals' reversal, holding that a demand for a usurious interest in a pleading is not a usurious charge of interest. *Id.* at 604.

Although the cure provision was added to article 5069 in 1993, the reasoning in *George A. Fuller* applies to this case. *See* Act of May 24, 1993, 73d Leg., R.S., ch. 767, § 1, 1993 Tex. Gen. Laws 2999, 2999-3000. As a pleading alone cannot constitute a demand for usurious interest, a pleading alone is insufficient to serve as notice to correct a usurious violation when not delivered to the obligor before the obligor communicates notice of violation to the creditor. The court stated that: "Pleadings serve to give a party notice of the issues at trial," and "are addressed to the court, and only demand that the court grant judgment . . . . [t]here is no demand on the opposing party." *Id.* at 605. The court opined that: "A charge must be communicated to the debtor . . . [and] need not be direct, as long as the charge is ultimately demanded from the debtor." *Id.* Similarly, to be in compliance with section 305.103, the creditor that previously demanded the usurious interest must communicate notice of the cure to the debtor *before* the obligor communicates its notice of violation. Tex. Fin. Code Ann. § 305.103. By filing the original petition only with the court on June 21, Strasburger communicated with the court, not TDGT; therefore, its notice was insufficient to cure the previous demand for usurious interest. We overrule Strasburger's second issue.

*Whether the District Court Properly Calculated the Usury Penalty*

We now turn to TDGT's only issue on appeal. TDGT argues that the trial court erred by failing to award TDGT: (1) "the sum of $57,229.20 as the principal amount sued upon by Strasburger because Strasburger charged in excess of twice the amount of legal interest as allowed

by § 305.002," and (2) "the sum $16,150.26 as a penalty for usurious charges of interest by Strasburger as required by § 305.001." Specifically, TDGT argues that when Strasburger made its demand for "interest at 10%," Strasburger was demanding a "charge of 10% accrued interest," which, when calculated over sixty-five days (March 16 to May 19), is interest at 38% per annum. TDGT also argues that regardless of whether the interest demanded was per annum or accrued interest, Strasburger demanded interest during the 30-day no-interest period provided in section 302.002 and that any interest charged during the no interest period "is greater than twice the amount authorized." *See id.* § 302.002 (interest rate of greater than six percent per year, when no interest is specified, is usurious); *see also* Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 1, 1997 Tex. Gen. Laws 3091, 3437 (amended 1999) (current version at Tex. Fin. Code Ann. § 305.002 (West Supp. 2003)) (liability for principal when charging interest greater than twice authorized amount).

TDGT alleges that, instead of charging six percent interest from April 14, or thirty days after the date the principal was due, on May 19 Strasburger demanded full payment of the principal plus "interest at 10%" on the entire amount due, and thus violated the interest-free period. Section 305.001 states that a person who charges a rate greater than the amount authorized is liable for the greater of:

(1)  three times the amount computed by subtracting the amount of interest allowed by law from the total amount of the interest contracted for, charged, or received; or

(2)  $2,000 or 20 percent of the amount of the principal, whichever is less.

*Id.* § 305.001. Section 305.002 is applicable when the rate charged is twice the authorized amount; it states in part:

> In addition to the amount determined under Section 305.001, a person who contracts for, charges, or receives interest that is greater than twice the amount authorized by this subtitle is liable to the obligor for the principal amount on which the interest is contracted for, charged, or received as well as interest and all other charges.

Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 1, 1997 Tex. Gen. Laws 3091, 3437.

The determination of whether the term "interest at 10%" is ambiguous is a question of law. *Robinson v. Robinson*, 961 S.W.2d 292, 298 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (interpretation of letter sent from wife to husband as to whether it waived her rights); *see also Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex. 1996) (ambiguity of contract is question of law). If an agreement is subject to more than one reasonable interpretation, it is ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). Once a document has been found to be ambiguous, its interpretation becomes a fact issue to be decided by the trier of fact. *AT&T Corp. v. Rylander*, 2 S.W.3d 546, 561 (Tex. App.—Austin 1999, pet. denied) (court determined contract ambiguity). In a nonjury case, if there are questions of fact, the trial court is the finder of fact and as such the judge of the evidence's credibility and the weight accorded to it. *Medlin v. Medlin*, 830 S.W.2d 353, 354 (Tex. App.—Amarillo 1992, writ denied).

The district court awarded TDGT $2146.96 as a usury-penalty offset against Strasburger's damage award. By the amount of damage the district court awarded for usury, we presume that the court did not apply section 305.002, because there was no forfeiture of the principal amount of the debt. TDGT argues that the district court "awarded an incorrect penalty based upon

the interpretation that 'interest at 10%' means interest at 10% per annum," and that the correct interpretation would be a charge of ten percent of accrued interest on the principal, or a charge of $5722.90.

The phrase "interest at 10%" has more than one reasonable meaning, and we believe the district court, as the trier of fact, reasonably interpreted the language in light of the stipulated facts. Therefore, the district court did not err in deciding that Strasburger was not required to forfeit the principal. First, by interpreting "interest at 10%" as per annum, an interpretation not contrary to any stipulated facts, the district court would not be required to order Strasburger to forfeit the principal amount of $57,229.20 under section 305.002. Similarly, under such interpretation TDGT would not be entitled to recover a penalty of $16,150.26, which TDGT calculated as ten percent accrued interest on the principal multiplied by three. *See* Tex. Fin. Code Ann. § 305.001. Second, neither Strasburger's demand letter nor the stipulated facts unequivocally reflect a request that TDGT pay interest during the thirty-day-no-interest period, thereby triggering the forfeiture requirement of section 302.002. *See id*. § 302.002. Such an interpretation absent a specific demand for interest within the thirty-day period would result in an unduly harsh application of the finance code, which is disfavored. *See Smart*, 597 S.W.2d at 341 (presumption is that parties intended nonusurious contract); *First State Bank v. Dorst*, 843 S.W.2d 790, 794 (Tex. App.—Austin 1992, writ denied) ("Usury statutes are penal in nature and, as a result, they must be strictly construed in such a way as to give the lender the benefit of the doubt."). We decline to hold as a matter of law that Strasburger's demand was for interest during the interest-free period.

21

However, we are unable to discern, from either the stipulated facts or the district-court judgment, how the district court derived the $2146.50 usury penalty. The district court filed no conclusions of law, and none were requested. Construing the demand most favorably to Strasburger, Strasburger demanded interest of $564.45 (10% per annum on $57,229.20 = $15.68 per day; April 14 to May 19 = 36 days x $15.68 per day = $564.45). Presuming that the maximum interest Strasburger could legally charge was $338.40 (6% per annum on $57,229.20 = $9.40 per day; April 14 to May 19 = 36 days x $9.40 per day = $338.40), Strasburger overcharged $226.05. The proper usury penalty would be three times the amount of the overcharge, or $678.15. Yet the district court assessed a penalty of $2146.50. Strasburger contends that the penalty "reflects the difference between interest at 10% per annum (which Strasburger's letter sought) and 6% per annum (which the finance code authorizes), trebled as a penalty." TDGT theorizes that "[t]he $2146.50 figure was an alternative calculation provided by TDGT, which only applies if the plain wording of the Strasburger demand is ignored and it is assumed that 'interest at 10%' means 'interest at 10% per annum.'" However, TDGT's "alternative calculation" renders a penalty of $2046.96, or $99.54 less than that assessed by the district court. Moreover, such penalty amount could only have been derived by computing interest during the thirty-day "interest-free period," March 16 to April 14. Under such circumstances, argues TDGT, Strasburger must forfeit the principal. *See Steves Sash & Door Co. v. Ceco Corp.*, 751 S.W.2d 473, 475 (Tex. 1988); *Houston Sash & Door*, 577 S.W.2d at 221. But the district court did not order Strasburger to forfeit the principal.[18]

---

[18] *Steves Sash & Door* and *Houston Sash & Door* construed an earlier version of the usury statute, which provided that "any person who . . . charges . . . interest which is in excess of double the amount of interest allowed . . . *shall forfeit* as an additional penalty, all principal." Act of May

Because we are unable to determine how the district court arrived at the usury penalty assessed against Strasburger, we must conclude that the district court awarded an incorrect penalty and sustain TDGT's issue.

**Mutual's Motion to Dismiss or Abate**

Mutual has challenged this Court's jurisdiction in a motion to dismiss or abate for lack of jurisdiction. Mutual argues that the district-court judgment is not final because the court did not dispose of Mutual's cross-action for indemnity against TDGT. The district court included a Mother Hubbard clause in its judgment; yet, as Mutual argues, the clause proved ineffective because of the automatic stay created by TDGT's bankruptcy proceeding. The bankruptcy court lifted the stay, stating: "the automatic stay is modified to terminate only as to [Strasburger]." *In re TDGT Limited Partnership*, No. 01-10547-FRM (Bankr. W.D. Tex. July 16, 2001) (order terminating stay). Mutual argues that this language only applied to Strasburger's claim; therefore "any order disposing of [the cross claim] was void because the automatic stay was never lifted [as to Mutual's cross claim]." In light of our ruling that Mutual is not liable to Strasburger on the bond, any indemnification claim against Strasburger is moot. We overrule Mutual's motion to dismiss or abate.

---

8, 1967, 60th Leg., R.S., ch. 274, § 2, 1967 Tex. Gen. Laws 608, 610 (amended 1997 & 1999) (current version at Tex. Fin. Code Ann. § 305.002) (emphasis added). The finance-code provision applicable here provides that "a person . . . who charges . . . interest that is greater than twice the amount authorized . . . *is liable to the obligor* for the principal amount." Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 1, 1997 Tex. Gen. Laws 3091, 3437 (current version at Tex. Fin. Code Ann. § 305.002) (emphasis added). We express no opinion as to whether the current statute compels principal forfeiture and decline to speculate whether the district court did so.

23

## CONCLUSION

We reverse that portion of the district-court judgment awarding TDGT a usury penalty of $2146.50 and remand TDGT's issue to the district court for further consideration consistent with this opinion. In all other respects, the district court's judgment is affirmed.

_____

Lee Yeakel, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed in Part; Reversed and Remanded in Part

Filed:   June 12, 2003